1
2
3
4

Gina L. Albertson (SBN 216960)
ALBERTSON LAW
2603 Main Street, Suite 860
Irvine, California 92614
Telephone: (949) 577-9464
Fax: (949) 577-9460
galbertson@albertsonlaw.org

5
6

Attorneys for Plaintiff,
Deutsche Bank National Trust Company, as Trustee, in Trust for Registered
Holders of WaMu Asset-Backed Certificates WaMu Series 2007-HE1 Trust

7

8 **UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION**

9

| | |
|---|---|
| 10 DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF WAMU ASSET-BACKED CERTIFICATES WAMU SERIES 2007-HE1 TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH LAND TITLE INSURANCE COMPANY; BUREAU OF INDIAN AFFAIRS; DORA SALGADO, an individual; ALANA MAE SEGUNDO, an individual; BELINDA SUE SHORT, an individual; MONICA LUTTERS, an individual; MARIA MENDEZ, an individual; LIZA PETE RODRIGUEZ, an individual; and DOES 1-50, inclusive.<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT FOR**<br><br>1. DECLARATORY JUDGMENT REGARDING VALIDITY AND ENFORCEABILITY OF DEED OF TRUST<br>2. BREACH OF LEASE AGREEMENT<br>3. CONSTRUCTIVE TRUST<br>4. DECLARATORY JUDGMENT REGARDING LEASE AGREEMENT<br>5. DECLARATORY JUDGMENT REGARDING 25 CFR § 165.366<br>6. BREACH OF INSURANCE CONTRACT<br>**7.** DECLARATORY JUDGMENT REGARDING INSURANCE CONTRACT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Deutsche Bank National Trust Company, as Trustee, in Trust for

Registered Holders of WaMu Asset-Backed Certificates WaMu Series 2007-HE1

Trust ("Deutsche Bank" or "Plaintiff") hereby alleges as follows and demands a

jury trial:

1
COMPLAINT

## I.   <u>PARTIES</u>

1.    Plaintiff Deutsche Bank National Trust Company is a national banking association, organized and existing under the laws of the United States and is the Trustee for the Registered Holders of WaMu Asset-Backed Certificates WaMu Series 2007-HE1 Trust, and was, at all times relevant to this action.

2.    Plaintiff is informed and believes, and thereon alleges that Defendant Commonwealth Land Title Insurance Company ("Commonwealth") is a title insurance company operating in California. Commonwealth insures title to real property in California and prosecutes and defends lawsuits in California.

3.    Plaintiff is informed and believes, and thereon alleges that the Bureau of Indian Affairs ("BIA") is a department of the United States Department of the Interior, which is an executive department of the United States of America.

4.    Plaintiff is informed and believes, and thereon alleges that Dora Salgado is an individual residing in the County of Riverside, State of California.

5.    Plaintiff is informed and believes, and thereon alleges that Alana Mae Segundo is an individual residing in the County of Riverside, State of California.

6.    Plaintiff is informed and believes, and thereon alleges that Belinda Sue Short is an individual residing in the County of Riverside, State of California.

7.    Plaintiff is informed and believes, and thereon alleges that Liza Pete Rodriguez is an individual residing in the County of Riverside, State of California.

8.    Plaintiff is informed and believes, and thereon alleges that Monica Lutters is an individual residing in the County of Riverside, State of California.

9.    Plaintiff is informed and believes, and thereon alleges that Maria Mendez is an individual residing in the County of Riverside, State of California.

10.    Defendants Dora Salgado, Alana Mae Segundo, Belinda Sue Short, Liza Pete Rodriguez, Monica Lutters, and Maria Mendez will be collectively referred to herein as "Lessors."

11.    The true names and capacities, whether individual, corporate,

associate or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff. Plaintiff therefore sues these Defendants by their fictitious names. Plaintiff is informed and believes, and based upon this information and belief alleges, that each of the Defendants designated herein as a fictitiously named Defendant is either contractually or tortuously responsible for the events and happenings herein referred to, and caused the damage to Plaintiff as herein alleged. When Plaintiff ascertains the true names and capacities of Defendants DOES 1 through 50, inclusive, it will ask leave of this Court to amend its Complaint by setting forth the same.

12.     Plaintiff is informed and believes, and based upon this information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were and are now, the agents, servants, and/or employees of their Co-Defendants, and in doing or omitting to do the acts and things herein complained of, were acting within the course and scope of said agency, service and/or employment, and/or that all of said acts and/or omissions were authorized and/or ratified by said co-Defendants, and/or were done with their knowledge and/or consent. Plaintiff will amend this complaint to show each such relationship to conform to proof, or upon order of this Court.

## II.     **<u>JURISDICTION</u>**

13.     Jurisdiction is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1331 because the case concerns questions of federal law with respect to the applicability of 25 CFR §§ 162.349–162.352 (2016) and 25 CFR §§ 162.353–162.356 (2016) and 25 CFR § 162.366 (2016), among other statutes.

14.     Jurisdiction is also proper under 28 U.S.C. § 1346 because this action is a civil action against the United States, upon a contract, not sounding in tort.

15.     Jurisdiction is also proper under 5 U.S.C. § 702 because Plaintiff has been aggrieved by an agency action or failure to act, seeks relief other than

monetary relief, and the United States is a Defendant and an indispensable party.

16.     Venue is proper in the United States District Court for the Central District of California, Eastern Division, because the County of Riverside is within the jurisdiction of Central District of California's Eastern Division and the real property at issue in this matter is located in Riverside County. Lessors, or a majority of them, reside in the County of Riverside. The BIA Palm Springs Field Office, which manages the real property at issue, is located in the County of Riverside. The majority of the witnesses and evidence are located within the County of Riverside. The County of Riverside is the intended place of performance of the Lease Agreement concerning the real property at issue. Additionally, Defendant Commonwealth does business in Riverside County; Defendant Commonwealth issued an insurance policy to insure against risks in Riverside County and therefore Riverside County is the place of intended performance; and the underlying acts giving rise to coverage occurred in Riverside County.

## III.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### 1.     The Subject Property

17.     The real property that is the subject of this action is located at 627 Violeta Dr., Palm Springs, California 92262 (the "Subject Property"), and is legally described as:

> All that certain real property situated in the County of Riverside, State of California, described as follows:
>
> A subleasehold as created by that certain sublease dated June 3, 1981, executed by Alejo Amado Associates, California Joint Venture, composed of Albert S. Geh, an individual, the Lebo Company, a General Partnership and Harbor Bluff's Development, a General Partnership, as lessor, and Ivy K. Ong and Karen Sue Ong, husband and wife as joint tenants, as lessee, and recorded on June 15, 1981 as Instrument No. 81-110352, Official Records, subject to the terms, conditions and provisions as contained therein.
>
> A CONDOMINIUM COMPRISED OF:
>
> Parcel 1:

A separate interest in and to Unit No. 17, as composed, described and shown on Condominium Plan record in Book C31, Pages 21 through 31, both inclusive, of Official Records, Riverside County Records.

Parcel 2:

An undivided one sixty-fourth (1/64th) interest as tenants in common in and to the improvements to the real property situated within Lot 1 of Tract 13688, in the City of Palm Springs, as said Tract is depicted and shown on a Map thereof recorded in Book 111, Pages 77 and 78 both inclusive, of Official Records, Riverside County Records; and Amended by Certificate of Correction recorded December 27, 1982 as Instrument No. 223134, Official Records said improvements include but are not limited to the structural buildings containing the Condominium Units and the Recreational Facilities;

Excepting therefrom, Units 1 through 64, both inclusive as composed, described and shown on said Condominium Plan;

Parcel 3:

An undivided one sixty-fourth (1/64th) Leasehold interest as a tenants in common and to the Master Lease, as defined herein, for the term thereof; in and to Lot 1 of said Tract No. 13688;

Excepting therefrom, Units 1 through 64, both inclusive, as composed, described and shown on the Condominium Plan referred to in Parcel 1, above; Also Excepting therefrom, the improvements referred to in Parcel 2, above.

18. The Subject Property is a subleasehold estate for years situated on Indian Trust Land that was originally conveyed under a Condominium Conveyance and Lease Assignment signed on June 3, 1981 and recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 81-110352 (the "Lease Agreement").

19. The Lease Agreement expressly defines "Ground or Master Lease" as "[t]hat certain United States Department of the Interior, Bureau of Indian Affairs, business lease No. PSL-246, Contract No. J53C1420-3561, dated June 2, 1978, executed by Gwendoly (sic) Saubel, allottee under allotment No. 25, as to Block 91; Alana Mae Segundo, allottee under allotment No. 64 as to Block 92; Belinda Sue Short, allottee under allotment No. 65, as to Block 93; and Lois Marie Pete, allottee under allotment No. 79, as to Block 94; as Lessors. A memorandum of

the assignment of the lessee's interest to Alejo-Amado Associates was recorded July 16, 1979, in Book 1979, Page 147821, Official Records of Riverside County, California."

20.     The Lease Agreement expressly defines "Lessor" as "[t]he lessors referred to in the ground or master lease above, or their respective successors and assigns."

21.     Plaintiff is informed and believes and thereon alleges that Dora Salgado succeeded Gwendolyn Saubel in interest, and is now the allottee under allotment 25, and is therefore a Lessor under the terms of the Lease Agreement.

22.     Plaintiff is informed and believes and thereon alleges that Liza Pete Rodriguez, Monica Lutters, and Maria Mendez succeeded Lois Marie Pete in interest, and are now the allottees under allotment 79, and are therefore Lessors under the terms of the Lease Agreement.

23.     Under the Lease Agreement, the BIA is tasked with collecting any rent due under the Lease Agreement and enforcing the provisions of the Lease Agreement. Specifically, section 5 of the Lease Agreement states, in part:

> All rents due and payable hereunder shall be paid to the Bureau of Indian Affairs at its offices or at such other depository as may be designated in writing from time to time by the authorized delegate of the Secretary of the Interior.

24.     The Lease Agreement provides that either the Lessors or the Secretary may enforce the provisions of the Lease Agreement.

25.     The Lease Agreement expressly defines "Secretary" as "[t]he Secretary of the Interior of the United States of America, or his duly authorized delegate or representative."

26.     Plaintiff is informed and believes and based upon this information and belief alleges, that the BIA is tasked with enforcing the Lease Agreement as a duly authorized delegate or representative of the Secretary of the Interior of the United States of America. Plaintiff alleges that the BIA is charged with fulfilling the trust

6
COMPLAINT

obligations of the United States to Native Americans and that the general purpose of the BIA regulations in the area of leasing Indian land is to further fulfill the Secretary's fiduciary responsibility to federally-recognized tribes and Indian individuals.

27.    The Lease Agreement itself also demonstrates that the BIA, acting on behalf of the Secretary, also acts as a co-lessor, to whom the obligations of the Lease Agreement are owed. Specifically, section 26 of the Lease Agreement expressly states:

> While the leased premises are held in trust by the United States or subject to a restriction against alienation imposed by the United States, all of the Lessee's obligations under this lease and the obligations of Lessee's sureties, if any, are to the United States as well as to the owner of the land.

**B.    The Purchase and Loan Transaction**

**1.    Bowhay Purchased the Subject Property**

28.    On or about April 22, 2005, Carolyn Bowhay ("Bowhay") purchased the Subject Property. The assignment to Bowhay was recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 2005-0399568 on May 19, 2005.

29.    The assignment to Bowhay was recorded with a "Consent to Assignment" signed by the BIA.

30.    The consent to assignment states:

> This will constitute Consent to all Assignments of Subleases which Consent is required by Article 16 of PSL-246 said Consent to Assignment form having been approved this day by Director, Palm Springs Field Office, Bureau of Indian Affairs.

> This consent is granted with the understanding that the Assignor and Assignee shall comply with the terms and conditions of the Sublease.

**2.    Bowhay Granted Whalen an Interest in the Subject Property**

31.    On or about October 10, 2016, Bowhay executed an Interspousal Transfer Deed and Grant Deed, conveying fifty percent of her interest in the

7
COMPLAINT

Subject Property to Robert Whalen ("Whalen") "a married man as his sole and separate property, as to an undivided 50% interest, as tenants in common."

32.    The Interspousal Transfer Deed was recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 2006-0859788 on November 11, 2006.

33.    The Grant Deed was recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 2006-0859789 on November 21, 2006.

34.    Neither the Interspousal Transfer Deed nor the Grant Deed to Whalen was recorded with any additional "Consent to Assignment" signed by the BIA.

### 3.    Bowhay and Whalen Executed the Subject Deed of Trust

35.    On or about November 15, 2006, Bowhay and Whalen obtained a loan in the principal amount of $329,000.00 in which they executed a note (the "Subject Note").

36.    The Subject Note is secured by a first position deed of trust encumbering the Subject Property (the "Subject Deed of Trust" and together with the Subject Note, the "Subject Loan"). The Subject Deed of Trust was recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 2006-0859790 on November 21, 2006.

37.    The Subject Deed of Trust identifies Washington Mutual Bank ("WAMU") as the lender.

38.    The Subject Deed of Trust was not recorded with any additional "Consent to Assignment" signed by the BIA.

#### a)    The Subject Deed of Trust is Authorized Because Prior Consent Explicitly Authorizes All Assignments

39.    Plaintiff is informed and believes, and thereon alleges, that the Subject Deed of Trust is authorized by the BIA. No additional "Consent to Assignment" was necessary because the Consent to Assignment attached to Bowhay's

COMPLAINT

Assignment "constitute[s] Consent to all Assignments of Subleases which Consent is required by Article 16 of PSL-246." The language of the consent expressly authorized future, current, and past assignments and encumbrances.

### b)    The Subject Deed of Trust is Valid Under California Law

40.    Plaintiff is informed and believes, and thereon alleges, that the Subject Deed of Trust is valid, fully enforceable and no provision of the Lease Agreement could invalidate the Subject Deed of Trust. Under California Law, a deed of trust validly imposes a lien on the leasehold estate even if the lease purports to limit the lessee's right to assign or encumber the lease. *Chapman v. Great Western Gypsum Co.*, 216 Cal. 420, 426–427 (1932).

### c)    The Subject Deed of Trust is Valid under Federal Regulations

41.    Plaintiff is informed and believes, and thereon alleges, that the Subject Deed of Trust is neither void nor voidable, and is therefore valid. *San Xavier Dev. Auth. v. Charles*, 237 F.3d 1149, 1153 (9th Cir. 2001) (interpreting 25 CFR § 162.12(a), the predecessor to current 25 CFR § 162.357(a) and prior 25 CFR § 162.610(a)).

42.    If further BIA approval was required for the Subject Deed of Trust, Plaintiff alleges that the Subject Deed of Trust is neither void or nor voidable, and neither does the cancellation of the Leasehold make this so. Instead the remedy for a violation of § 162.12(a) is found in 25 CFR § 162.14, which" provides for written notice and opportunity to cure.

43.    25 CFR § 162.12(a) was superseded by 25 CFR § 162.610(a) and again by 25 CFR § 162.357(a). Neither of the superseding regulations declares that a sublease, assignment, or encumbrance that does not receive BIA approval is void or voidable. *Compare* 25 CFR § 162.12(a) *with* 25 CFR § 162.610(a) *and* 25 CFR § 162.357(a). Instead, the regulations continue to provide for notice and

9

COMPLAINT

1  opportunity to cure in the event of an unapproved sublease, assignment, or

2  encumbrance. *See* 25 CFR § 162.366.

3      44.    Therefore, Plaintiff alleges that because the Subject Deed of Trust was

4  neither void nor voidable, it is valid and fully enforceable in all respects regardless

5  of the improper Leasehold cancellation.

6          **d)     The Subject Deed of Trust is Enforceable Against Any**

7                **After Acquired Interests Under California Law**

8      45.    Plaintiff is informed and believes, and thereon alleges, that the Subject

9  Deed of Trust is also enforceable against any after acquired interest in the Subject

10  Property pursuant to Cal. Civ. Code § 2897.

11      46.    Pursuant to Cal. Civ. Code § 1214, a subsequently created lien only

12  takes priority over an earlier created lien if (1) the earlier lien was not recorded; (2)

13  the later lien holder was without notice of the earlier lien; (3) the later lien holder

14  gave value for the lien; and (4) the later lien was recorded first. However, a party

15  with actual knowledge of a prior lien cannot claim priority over it even if the lien

16  was not recorded. Cal. Civ. Code § 1217.

17      47.    Plaintiff alleges that because the Subject Deed of Trust was recorded,

18  it is valid and enforceable against all after acquired interests under California law.

19         **4.    Deutsche Bank is the Beneficiary of the Subject Deed of**

20             **Trust**

21      48.    The Subject Loan, including the Subject Note, the Subject Deed of

22  Trust, and all of its accompanying rights and documentation, was sold, assigned,

23  and conveyed by WAMU, and by virtue of the Pooling and Servicing Agreement

24  dated January 1, 2007, assigned to Deutsche Bank National Trust Company, as

25  Trustee for the Registered Holders of the WaMu Asset-Backed Certificates WaMu

26  Series 2007-HE1 Trust.

27      49.    On or about April 9, 2012, JP Morgan Chase Bank, National

28  Association successor in interest of certain rights by purchase from the FDIC as

**COMPLAINT**

receiver of Washington Mutual Bank prepared a Corporate Assignment of Deed of Trust evidencing and to provide record notice to third parties of the assignment of the Subject Loan, including the Subject Deed of Trust, to Deutsche Bank. The Corporate Assignment of Deed of Trust was recorded in the Riverside County Recorder's Office as Instrument Number 2006-0859790 on May 7, 2012.

### C. **Commonwealth Insured the Subject Deed of Trust**

50.     On or about November 17, 2006, Commonwealth issued a title insurance policy that insures, Deutsche Bank, the owner of the Subject Loan, policy number 03726379 (the "Policy").

51.     The Policy was issued to insure the title to the Subject Property and the validity of Subject Deed of Trust. Specifically, the Policy insures against "[t]itle to the estate or Interest described in Schedule A being vested other than as stated herein;" "[u]nmarketability of the tile;" "[a]ny defect in or lien or encumbrance on the title;" "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title;" and "[t]he invalidity or unenforceability of any assignment of the insured mortgage…."

52.     The Subject Deed of Trust is the "insured mortgage" defined in the Policy's Schedule A, and more particularly described in Policy's Exhibit A. The Policy's Exhibit A defines the "insured mortgage" as "A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby… Recorded: November 17, 2006 as Instrument No. 2006-859790, Official Records."

53.     Deutsche Bank is an "insured" within the meaning of the Policy. Under Section 1, titled "Definition of Terms" subsection (a)(i), the Policy defines "insured" to mean "the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness…."

54.     As the owner of the Subject Loan, including assignee of the Subject Deed of Trust, Deutsche Bank is a "successor in ownership of the indebtedness" as

1  defined in the Policy and is therefore entitled to recover any rights, obligations, or

2  payments due under the Policy.

3      **D.    The BIA Decided to Terminate the Lease for the Subject Property**

4      55.    On or about January 7, 2016, the BIA sent a letter to Bowhay

5  providing notice of its decision to terminate the Lease Agreement for the Subject

6  Property.

7      56.    The BIA's January 7, 2016 letter asserted that the Subject Deed of

8  Trust, the Grant Deed to Whalen, and Corporate Assignment of Deed of Trust to

9  Deutsche Bank were not approved by the BIA. (*See* Ex. H).

10     57.    Upon receipt of the BIA's January 7, 2016 letter indirectly not from

11  the BIA, it was sufficiently received and understood that the Leasehold was being

12  cancelled and that the BIA contended that the Subject Deed of Trust, Grant Deed

13  to Whalen, and Corporate Assignment of Deed of Trust lacked BIA approval.

14     58.    Within the thirty day notice of appeal period, on or about February 5,

15  2016, Deutsche Bank appealed the decision to terminate the Lease Agreement for

16  the Subject Property by letter to the BIA at the address specified in the BIA's

17  January 7, 2016 letter.

18     59.    The BIA refused to acknowledge Deutsche Bank's standing to appeal

19  its decision to terminate the Lease Agreement and directed Deutsche Bank to

20  negotiate with Lessors, through their attorney. Likewise, the BIA refused to

21  provide Deutsche Bank with an administrative hearing and all procedural due

22  process required by the Administrative Procedures Act.

23     60.    The Indian landowners claimed that the leasehold estate was cancelled

24  and that the leasehold cancellation would not be rescinded. However, according to

25  the BIA, despite the BIA's January 7, 2016 letter, the cancellation did not become

26  immediately effective. Rather, the BIA held the cancellation because it received

27  Deutsche Bank's appeal.

28

**COMPLAINT**

### 1. Lessors and the BIA Violated the Lease Agreement, which Provides for Notice and Opportunity to Cure

61. The Lease Agreement gives all encumbrancers forty-five days' notice of any intention to terminate the Lease Agreement. Specifically, section 18 of the Lease Agreement states, in part:

> At least forty-five (45) days prior to termination of this lease or default by Lessee, Lessor or the Secretary shall give notice in writing to the encumbrancer expressing Lessor's intention to terminate and describing said default or breach.

62. The Lease Agreement also gives an encumbrancer forty-five days' notice and opportunity to cure any default that can be cured by payment or expenditure of money. Specifically, section 18 of the Lease Agreement states, in part:

> When the default or breach can be cured by the payment or expenditure of money, this lease will not be terminated if within forty-five (45) days after receipt of such written notice to terminate, encumbrancer shall cure the default or breach. Whenever the encumbrancer exercises any right on a default situation, the encumbrancer shall be bound to comply with all of the obligations and conditions of the lease….

63. Section 18 also provides for forty-five days' notice and opportunity to initiate foreclosure where a default of the Lease Agreement cannot be cured by payment or expenditure of money, and provides that during the foreclosure process the Lease Agreement will not be terminated. Specifically, section 18 of the Lease Agreement states, in part:

> When the default or breach cannot be cured by the payment or expenditure of money, this lease will not be terminated if the encumbrancer shall, within the forty five (45) day period initiate, and thereafter diligently pursue to completion, proceedings for foreclosure and sale under the pursuant to the terms of the encumbrance. However, during and until the completion of such foreclosure proceedings, the encumbrancer shall pay the rents due and payable by the Lessee under this lease; shall maintain all insurance as required by the lease; shall pay all taxes due and unpaid on the taxable property covered by the lease; shall maintain all insurance as required by the lease; shall pay all taxes due and

unpaid on the taxable property covered by the lease [sic]; shall begin the cure of any other default or breach not curable by payment or expenditure or [sic] money, which can be reasonably undertaken by the encumbrancer, and all [sic] diligently prosecute the said cure of such default or breach until the leasehold is either sold upon foreclosure pursuant to the terms of the encumbrance, or released or reconveyed thereafter.

64.     The Lease Agreement also expressly defines "Approved Encumbrance" as "[a]n encumbrance upon the real property conveyed and assigned herein approved by the Secretary."

65.     The Lease Agreement distinguishes between an "approved encumbrance" and an unapproved encumbrance, as demonstrated by the specific use of the term "approved encumbrance" in section 17 of the Lease Agreement to mean an encumbrance that was approved by the Secretary. (Lease § 17, p. 13 compared *with* § 18, pp. 14–15).

66.     Although the Lease Agreement distinguishes between encumbrancers with approved encumbrances and encumbrancers with unapproved encumbrances, section 18 of the Lease Agreement provides for notice and opportunity to cure or foreclose to *all* encumbrancers regardless of whether the encumbrance is approved or unapproved. This is demonstrated by express omission of any distinction between encumbrancers of approved and unapproved encumbrances in section 18 of the Lease Agreement. Such lack of distinction furthers Lessors' interest of ensuring payment under, and compliance with, the Lease Agreement. (Lease § 18, pp. 14–15). Such lack of distinction maximizes the number of parties available to cure a lessee's default.

67.     Plaintiff alleges that as owner of the Subject Loan and assignee of the Subject Deed of Trust, Deutsche Bank is an encumbrancer of the Subject Property, and therefore, a third-party beneficiary of the Lease Agreement.

68.     Specifically, section 18 of the Lease Agreement, was written expressly to protect the interests and rights of encumbrancers like Deutsche Bank

COMPLAINT

in return for furthering Lessors' interest of ensuring payment under and compliance with the Lease Agreement.

69.    Plaintiff alleges that although section 18 of the Lease Agreement provides for notice and opportunity to cure or foreclose by the Secretary or the Lessors' prior to termination of the Lease Agreement, the Secretary first gave notice to WAMU, which was no longer a viable entity, although the Corporate Assignment of Deed of Trust was recorded, and later it appears to have been sent to an address other than the address listed for the servicer on the Corporate Assignment of Deed of Trust as the address identified to contact for matters involving the Subject Loan. Thus, Plaintiff alleges that the attempted notice by the Secretary was insufficient in all respects to cancel the Lease as against Deutsche Bank and to have any effect on Deutsche Bank's lien.  Plaintiff further alleges that the Secretary and Lessors' failed to comply with the terms to cancel the Lease and thus as to Deutsche Bank the Lease is fully enforceable as it relates to its rights as an encumbrancer of the Subject Property.  Plaintiff also alleges that Lessors gave no notice of any default to Deutsche Bank separate from the Secretary's efforts. Nor did the Secretary or Lessors give Deutsche Bank an opportunity to cure or foreclose.  Therefore, Plaintiff alleges that the cancellation of the Lease is null and void as to Deutsche Bank and that the Subject Deed of Trust is valid, senior, and fully enforceable as to all other interests and suffered no prejudice as a result of the cancellation of the Lease to the borrowers .

## 2.    25 CFR Section 162.366 Also Provides for Notice and Opportunity to Cure

70.    Pursuant to 25 CFR § 162.366, in the event of a breach of the Lease Agreement, the BIA is required to give notice to "the lessee and any mortgagee a notice of violation by certified mail, return receipt requested" as well as an opportunity to cure. Specifically, 25 CFR § 162.366 states:

(a) In the absence of actions or proceedings described in

15

COMPLAINT

§162.365(e), or if it is not appropriate for us to defer to the actions or proceedings, we will follow the procedures in paragraphs (b), (c), and (d) of this section and, as applicable, ensure consistency with 25 U.S.C. 4137.

(b) If we determine there has been a violation of the conditions of a residential lease other than a violation of payment provisions covered by paragraph (c) of this section, we will promptly send the lessee and any mortgagee a notice of violation by certified mail, return receipt requested.

(1) We will send a copy of the notice of violation to the tribe for tribal land, or provide constructive notice to Indian landowners for individually owned Indian land.

(2) The notice of violation will advise the lessee that, within 10 business days of the receipt of a notice of violation, the lessee must:

(i) Cure the violation and notify us, and the tribe for tribal land, in writing that the violation has been cured;

(ii) Dispute our determination that a violation has occurred; or

(iii) Request additional time to cure the violation.

(3) The notice of violation may order the lessee to cease operations under the lease.

(c) A lessee's failure to pay rent in the time and manner required by a residential lease is a violation of the lease, and we will issue a notice of violation in accordance with this paragraph.

(1) We will send the lessee and any mortgagee a notice of violation by certified mail, return receipt requested:

(i) Promptly following the date on which the payment was due, if the lease requires that rental payments be made to us; or

(ii) Promptly following the date on which we receive actual notice of non-payment from the Indian landowners, if the lease provides for payment directly to the Indian landowners.

(2) We will send a copy of the notice of violation to the tribe for tribal land, or provide constructive notice to Indian landowners for individually owned Indian land.

(3) The notice of violation will require the lessee to provide adequate proof of payment.

.

71.    Plaintiff further alleges that 25 CFR § 165.366 requires the BIA to transmit to "the lessee and any mortgagee a notice of violation by certified mail,

return receipt requested" in the event of a lease violation, and provide an opportunity to cure, has been effective since January 4, 2013.

72.    Despite its regulatory obligation to do so, the BIA did not properly provide prompt notice of violation to Deutsche Bank. Instead of a prompt notice to Deutsche Bank, notice was sent to a defunct entity, WAMU, despite the Corporate Assignment being recorded at the time. Thereafter, Plaintiff alleges that notice was not provided to the address designated on the Corporate Assignment to contact regarding the Subject Deed of Trust, which was the servicer's designated address.

73.    Plaintiff alleges that in addition to the notice requirements pursuant to statute and the Lease which the BIA and Lessors' failed to comply with, under the Administrative Procedure Act Section 5(b), 5 U.S.C. § 554(b), persons entitled to notice of an administrative hearing must be informed of the matters of facts and law asserted to afford due process. Where, as here, the party proceeded against was not given an opportunity to defend itself, an adverse finding by the agency violates due process under the Administrative Procedure Act Section 5(b), 5 U.S.C. § 554(b).

74.    Plaintiff alleges that it was not properly notified of the BIA's intention to terminate the Lease Agreement, despite the Lease Agreement terms and BIA's regulations requiring notice. The BIA's failure to provide notice to Deutsche Bank and failure to follow its own regulations was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C.A. § 706(2)(A). Thus, Plaintiff alleges that Deutsche Bank is entitled to judgment in its favor that the BIA's decision to terminate the Lease Agreement was unlawful, setting aside the termination of the Lease, and requiring the BIA and Lessors to approve the Subject Deed of Trust in all respects. 5 U.S.C.A. § 706.

### E.    **Deutsche Bank Tendered the Claim to Commonwealth**

75.    Because the BIA asserted that the Subject Deed of Trust, the underlying Assignment to Whalen, and the Assignment of the Subject Deed of

Trust to Deutsche Bank were not authorized and invalid as against the interests of the Lessors with respect to the Subject Property, Deutsche Bank tendered a claim under the Policy to Commonwealth.

76.     On or about July 18, 2016, Commonwealth denied the claim on the grounds that it was allegedly prejudiced because the Lease had been cancelled before Deutsche Bank tendered the claim.

77.     Plaintiff alleges that as grounds for the denial, Commonwealth used letters from the BIA to Bowhay and Whalen. Those letters date back to March 17, 2015; however, one of the letters was sent to WAMU, which is no longer a viable entity, after the Assignment to Deutsche bank was recorded and the second was not sent to the designated address for Deutsche Bank that was identified as the address to use to contact Deutsche Bank regarding the Subject Deed of Trust on the Assignment.  Thus, Plaintiff further alleges that these letters as addressed do not constitute sufficient notice to trigger Plaintiff's knowledge and determination that a title claim was appropriate.

78.     Plaintiff further alleges that Commonwealth already knew of the title issue and failed to correct it despite taking efforts to do so in 2007 after the loan closed.  As a result, Plaintiff did not have any obligation to notify Commonwealth of facts that it already knew about the title issue and should have, but failed to correct it after undertaking the obligation to do so. Thus the denial on the grounds of late notice breaches the coverage obligations under the policy since not only was there no duty to notify Commonwealth of information it already knew, but there was no actual prejudice since Commonwealth was prejudiced, if at all, by its own failure to obtain the BIA separate approval for the Subject Deed of Trust that it advised the owner of the indebtedness that it was doing almost ten years ago.

79.     Plaintiff further alleges that Commonwealth prematurely denied the claim without proper investigation.  Plaintiff alleges upon information and belief that the basis for this denial violates Commonwealth's duty under the policy to

investigate the basis for coverage in this matter and that its reasoning was insufficient to deny the claim based on claimed actual notice that prejudiced Commonwealth.

80.     Plaintiff further alleges, upon information and belief, that while the short sale was proceeding, Chicago Title Insurance Company, an entity jointly operated by Fidelity National Title Insurance Company ("Fidelity") with Commonwealth, was utilized to provide vesting and title information, obtain the preliminary title report, and to insure the proposed short sale. Given that this was a an Indian leasehold estate subject to specific federal regulation and procedures under the BIA, the method for ensuring that title to the Subject Property was properly transferred was much more significant and complex causing Deutsche Bank to rely more naturally on its title insurance vender who was directing how the deed should vest and how to otherwise properly transfer title to the Subject Property to Deutsche Bank in lieu of foreclosure to allow for recovery of the security interest in the Subject Property (the Subject Deed of Trust—  the document at the heart of this matter that lacked the original separate BIA authorization).

81.     Plaintiff further alleges, upon information and belief, that Chicago Title mishandled the vesting requests and other title services it provided causing significant delays in the short sale such that the proposed buyer decided not to purchase the Subject Property at least six months before the Lease was cancelled.

82.     Plaintiff further alleges, upon information and belief, that Chicago title also delayed the deed in lieu transaction after the proposed buyer discontinued the short sale transaction which was instrumental in causing and defeating Deutsche Bank's  prompt ownership of the Subject Property and  thus thwarted its normal course of action which is its most pivotal opportunity to determine and cure the borrowers' default under the lease thereby preventing it from being cancelled and from actually discovering the lack of authorization and remedying it before the

19

COMPLAINT

cancellation.

83.    Plaintiff also alleges that Chicago Title identified the BIA approval requirements in the preliminary title report, but failed to advise Deutsche Bank that its Subject Deed of Trust did not appear to comply with them.  Since Deutsche Bank was relying on Chicago Title to instruct the parties in both the short sale and the deed in lieu attempted transactions, Plaintiff alleges that Chicago Title is responsible for the Lease cancellation and any prejudice if any to Commonwealth. Plaintiff also alleges that Chicago Title had actual knowledge or should have determined that the Subject Deed of Trust required the separate BIA approval form to the extent it is required, since it undertook to advise the parties in the short sale and deed and lieu transactions as to title.  Plaintiff also alleges upon information and belief that since Commonwealth and Chicago Title are both owned and operated by Fidelity, they are agents, servants, and/or alter-egos of the other such that Chicago's Notice, Failure to Notify Deutsche Bank of the issue, and delay causing the cancellation, should be imputed to Commonwealth for all claims herein.

**F.    Commonwealth Knew the Subject Deed of Trust Lacked Separate BIA Approval since April 2007**

84.    Plaintiff further alleges that Commonwealth sent a letter to WAMU, dated April 6, 2007, acknowledging and advising WAMU that the Subject Deed of Trust lacked the separate BIA approval. Commonwealth also undertook the responsibility and selected the option under the policy to obtain the BIA's approval.

85.    However, despite Commonwealth unilaterally undertaking the obligation to perfect the Subject Deed of Trust as to the BIA and the Lessors, under the policy, Plaintiff alleges that Commonwealth failed to complete its task and knowingly, willingly, recklessly and without regard for the rights of the lien holder, breached its obligations under the policy and left the Subject Deed of Trust

20
**COMPLAINT**

without the separate BIA authorization.

86.    Accordingly, Plaintiff alleges that Commonwealth had notice of the lack of separate BIA authorization for the Subject Deed of Trust for almost ten years before the Lease was cancelled, it undertook to resolve the lack of separate BIA authorization and failed, it represented it was handling the matter causing detrimental reliance and likely prevented other resolution to correct the lack of approval by the BIA with respect to the Subject Deed of Trust, and most recently, Commonwealth denied the title claim on the basis that Plaintiff had somehow caused it prejudice in violation of its duties under the title insurance policy to provide coverage in accordance with the reasonable expectations of the insured, to diligently investigate the basis for the claim, and to give the insureds interests equal weight as its own; Plaintiff alleges that Commonwealth is liable for the full extent of the coverage under the policy, in addition to compensatory, punitive, and other damages that will be determined at the time of trial.  Plaintiff further alleges that since Commonwealth had actual knowledge of this issue and failed to correct it for approximately ten years, and participated in other wrongful conduct, Plaintiff could not have actually prejudiced Commonwealth.  Rather, it was Commonwealth's own negligence that prejudiced itself, to the extent that it is prejudiced.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment Regarding Validity of the Subject Deed of Trust)

### (All Defendants and DOES 1-50 Except Commonwealth)

87.    Deutsche Bank hereby incorporates each and every allegation asserted above, and re-alleges them as though fully set forth herein.

88.    An actual controversy has arisen and now exists between Deutsche Bank, the BIA, Lessors, and DOES 1-50, as to the validity of the Subject Deed of Trust.

COMPLAINT

89.     Bowhay and Whalen executed the Subject Note and Subject Deed of Trust, listing WAMU as the lender. The Subject Deed of Trust was recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 2006-0859790 on November 21, 2006.

90.     Although the Subject Deed of Trust was not recorded with any additional "Consent to Assignment" signed by the BIA, it is valid. No additional consent to assignment was necessary because the Consent to Assignment attached to Bowhay's Assignment "constitute[s] Consent to all Assignments of Subleases which Consent is required by Article 16 of PSL-246." The language of the consent expressly authorized future, current, and past assignments and encumbrances.

91.     Plaintiff alleges that the Subject Deed of Trust is valid and no provision of the Lease Agreement can invalidate the Subject Deed of Trust. Under California Law, the Subject Deed of Trust validly imposes a lien on the leasehold estate even if the lease purports to limit the lessee's right to assign or encumber the lease.

92.     Plaintiff alleges that pursuant to 25 CFR § 162.357(a), the Subject Deed of Trust is neither void nor voidable, and is therefore valid.

93.     Plaintiff alleges that according to prior 25 CFR § 162.12(a) did "not state that [subleases, assignments, or encumbrances] which did not receive BIA approval [were] void or voidable. Instead the remedy for a violation of § 162.12(a) is found in 25 CFR § 162.14, which" provides for written notice and opportunity to cure.

94.     Plaintiff alleges that neither of the superseding regulations declares that a sublease, assignment, or encumbrance that does not receive BIA approval is void or voidable. *Compare* 25 CFR § 162.12(a) *with* 25 CFR § 162.610(a) *and* 25 CFR § 162.357(a). Instead, pursuant to 25 CFR § 162.366, notice and an opportunity to cure in the event of an unapproved sublease, assignment, or encumbrance is required. Plaintiff alleges that BIA and the Lessors failed to

22

COMPLAINT

provide sufficient and proper notice or an opportunity to cure the cancellation and lack of separate BIA authorization.  Based on the BIA and the Lessors' failure to comply with the terms of the Lease and the CFR, the cancellation of the Lease is void and the Subject Deed of Trust fully valid and enforceable in all respects.

95.    Plaintiff alleges that the Subject Deed of Trust is also enforceable against any after acquired interest in the Subject Property pursuant to Cal. Civ. Code § 2897 since it was properly recorded in the title to the Subject Property.

96.    Plaintiff further alleges that it is entitled to declaratory relief pursuant to Cal. Civ. Code § 1214 because the Subject Deed of Trust takes priority over any and all subsequently created liens since it was dully recorded providing notice to third parties and was obtained in exchange for valuable consideration.

97.    Because the Subject Deed of Trust was recorded, it is valid and enforceable against all after acquired interests under California law.

98.    Deutsche Bank is an encumbrancer of the Subject Property because it is an assignee of the Subject Deed of Trust.

99.    The Subject Loan, including the Subject Note, the Subject Deed of Trust, and all of its accompanying rights and documentation, was sold, assigned, and conveyed by WAMU, and by virtue of the Pooling and Servicing Agreement dated January 1, 2007, transferred to Deutsche Bank National Trust Company with respect to the "WaMu Asset-Backed Certificates WaMu Series 2007-HE1 Trust" between WAMU Asset Acceptance Corp. as Depositor, and Deutsche Bank National Trust Company Delaware, as Trustee, on or about January 1, 2007.

100.    On or about April 9, 2012, JP Morgan Chase Bank, National Association successor in interest by purchase from the FDIC as receiver of Washington Mutual Bank executed a Corporate Assignment of Deed of Trust, evidencing and recording the assignment of the Subject Deed of Trust to Deutsche Bank to place third parties on notice of the assignment. The Corporate Assignment of Deed of Trust was recorded in the Riverside County Recorder's Office as

23

**COMPLAINT**

1    Instrument Number 2006-0859790 on May 7, 2012.

2        101.    As an encumbrancer, Deutsche Bank has substantive rights to receive

3    notice and opportunity to cure, both under the Lease Agreement and under

4    applicable federal regulations. Deutsche Bank also has substantive rights under the

5    Subject Deed of Trust as the owner of the Subject Loan, including but not limited

6    to, the right to conduct a non-judicial foreclosure sale and the right to insurance

7    proceeds under the title insurance policy issued by Commonwealth.

8        102.    Plaintiff alleges, upon information and belief, that the BIA and

9    Lessors cancelled the Lease Agreement without giving Deutsche Bank proper and

10    sufficient notice and opportunity to cure. Plaintiff also alleges upon information

11    and belief that neither the BIA nor Lessors gave Deutsche Bank forty-five days'

12    proper and sufficient notice of any intention to terminate the Lease Agreement, an

13    opportunity to cure any default that can be cured by payment or expenditure of

14    money, and an opportunity to initiate and complete foreclosure for any default that

15    cannot be cured by payment or expenditure of money.

16        103.    Likewise, Plaintiff alleges upon information and belief, that the BIA

17    cancelled the Lease Agreement without giving Deutsche Bank proper and

18    sufficient notice and opportunity to cure as required under 25 CFR § 165.366.

19    Plaintiff alleges upon information and belief that BIA's failure to provide proper

20    and sufficient notice and an opportunity to cure renders the BIA's decision to

21    terminate the Lease Agreement arbitrary and capricious, and an abuse of discretion

22    under 5 U.S.C.A. § 706(2)(A).

23        104.    Plaintiff alleges that there is a judiciable controversy that is ripe for

24    judicial determination since the BIA, the Lessors, and DOES 1-50 assert that the

25    Subject Deed of Trust is invalid and unenforceable in direct contravention to

26    Plaintiff's rights.  Plaintiff alleges that the BIA and Lessors also assert that the

27    Lease Agreement has been cancelled and/or refuse to allow Plaintiff to cure any

28    default and obtain authorization, despite failure to follow proper termination

COMPLAINT

procedures under both the Lease Agreement and applicable regulations.

105. The BIA and Lessors also assert that Bowhay's interspousal transfer deed and grant deed to Whalen is invalid.

106. Based on these significant controversies, a judicial determination of the validity and enforceability of the Subject Deed of Trust is necessary and appropriate at this time to protect Deutsche Bank's rights and interests.

## SECOND CAUSE OF ACTION

### (Breach of Lease Agreement)

### (All Defendants and DOES 1-50 Except Commonwealth)

107. Deutsche Bank hereby incorporates each and every allegation asserted in Paragraphs 1-106 above, and re-alleges them as though fully set forth herein.

108. Plaintiff alleges that it is an encumbrancer of the Subject Property who may enforce the Lease pursuant to California Civil Code Section 1559 since the Lease provides expressly for the benefit of encumbrancers. The Leasors and the borrowers as assignees, understood that an encumbrancer would benefit from the Lease and the provisions as set forth below and in the CFR's requiring notice to lien holders demonstrate this understanding.

109. The Lease Agreement signed on June 3, 1981 and recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 81-110352, is a contract for lease of the Subject Property. The offer to lease the property was accepted by the borrowers as assignees in exchange for valuable consideration, including rental fees.

110. The Lease Agreement expressly provides for forty-five days' notice to any and all encumbrancers of any intention to terminate, an opportunity to cure any default that can be cured by payment or expenditure of money, and an opportunity to initiate and complete foreclosure for any default that cannot be cured by payment or expenditure of money. (Lease § 18, pp. 14–15).

111. Deutsche Bank is an encumbrancer of the Subject Property because it

is an assignee of the Subject Deed of Trust. Therefore, Deutsche Bank is a third-party beneficiary of the Lease Agreement.

112.   Section 18 of the Lease Agreement was written expressly to protect the interests and rights of encumbrancers like Deutsche Bank in return for furthering the Lessors' interest of ensuring payment under, and compliance with, the Lease Agreement.  The Notice and Cure provisions apply to encumbrancers who are not approved by the BIA as set forth in Paragraphs 54-69 above which are incorporated herein again by specific reference.

113.   The BIA, Lessors, and DOES 1-50 breached the Lease Agreement by failing to give Deutsche Bank proper and sufficient forty-five days' notice required to terminate the Lease Agreement, an opportunity to cure any default that can be cured by payment or expenditure of money, and an opportunity to initiate and complete foreclosure for any default that cannot be cured by payment or expenditure of money.

114.   Instead, Deutsche Bank obtained the BIA's January 7, 2016 letter indirectly through loss mitigation efforts with multiple parties, including Chicago Title, that obfuscated the issue, although Plaintiff was relying on Chicago Title to provide accurate and complete information as to vesting and title matters to protect its security interest in the Subject Deed of Trust extensively prior to the Lease cancellation.

115.   Had either the Secretary, acting through the BIA, the Lessors, or DOES 1-50, given Deutsche Bank proper and sufficient notice as specified in section 18 of the Lease Agreement, Deutsche Bank would have been able to either cure any default that could be cured by payment or expenditure of money or initiated and completed a foreclosure for any default that could not be cured by payment or expenditure of money.

116.   As a result of the BIA, the Lessors' and DOES 1-50's failure to give proper and sufficient notice of Lessors' intent to terminate the Lease Agreement to

26

**COMPLAINT**

Deutsche Bank and the resulting position of the BIA and Lessors that the Subject Deed of Trust is not valid and enforceable following the cancellation, while preserving all rights and objecting to the BIA's Lessors' and DOES 1-50's claims of the invalidity and unenforceability of the Subject Deed of Trust, to the extent of the loss of its security interest, Deutsche Bank has been damaged in the amount to be proven at trial, but not less than all amounts due and owing under the indebtedness estimated at $350,000.00. Additionally, Plaintiff is damaged by the breach of contract since it lost its right to cure or initiate and complete foreclosure as contemplated by section 18 of the Lease Agreement. Plaintiff alleges that it is further damaged since there is a cloud on its title to its security interest due to the wrongful cancellation which caused it to incur damages in an amount estimated at $350,000.00 but not less than the total amounts due and owing under the Subject Loan.

**THIRD CAUSE OF ACTION**

**(Constructive Trust)**

**(All Defendants and DOES 1-50 Except Commonwealth)**

117. Deutsche Bank hereby incorporates each and every allegation asserted in Paragraphs 1-116, and re-alleges them as though fully set forth herein.

118. Plaintiff is entitled to a Constructive Trust pursuant to California Civil Code Section 2223 because the BIA, Lessors, and DOES 1-50, wrongfully cancelled the Lease Agreement in violation of the Administrative Procedures Act and without giving proper and sufficient notice in violation of the CFR regulations set forth above and the Lease Agreement terms.

119. The Subject Property is the res.

120. As an encumbrancer of the Subject Property, Deutsche Bank has a vested interest in the Subject Property, including the right to conduct a non-judicial foreclosure sale under the Subject Deed of Trust.

121. Plaintiff alleges that to the extent that the BIA, the Lessors, and DOES

27

COMPLAINT

1-50, have wrongfully obtained the Subject Property without encumbrance by Plaintiff's Subject Deed of Trust: which Plaintiff refutes, denies, objects to and hereby preserves all rights to oppose to the fullest extent under the law; the BIA, the Lessors, DOES 1-50 and/or any other person or entity that claims seniority to Plaintiff's security interest, Plaintiff is entitled to a constructive trust over the Subject Property, including all proceeds any person derived from the Subject Property, so that it may proceed with foreclosure and liquidate its security interest as provided by the Subject Deed of Trust.

122.   The Lease Agreement expressly provides for forty-five days' notice of any intention to terminate the Lease Agreement, an opportunity to cure any default that can be cured by payment or expenditure of money, and an opportunity to initiate and complete foreclosure for any default that cannot be cured by payment or expenditure of money as required by the Lease Agreement. Likewise, the federal regulations identified above require notice and an opportunity to be heard before an agency renders an adverse finding regarding property interests. The BIA's, and DOES 1-50's failure to provide notice to Deutsche Bank and failure to follow its own regulations was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C.A. § 706(2)(A) and Deutsche Bank is entitled to judgment that the BIA's, the Lessors', and/or DOES 1-50's cancellation of the Lease Agreement was unlawful and judgment setting aside the cancellation.

123.   As a result of the final decision to cancel the Lease Agreement, Deutsche Bank, while preserving all objections and arguments to the contrary, and to the extent that this is the case, lost its substantive rights in the Subject Property including the right to conduct a non-judicial foreclosure sale of the Subject Property under the Subject Deed of Trust causing significant damages in an amount estimated at $350,000 to be determined at trial.  Plaintiff is entitled to a constructive trust as to the Subject Property, including, but not limited to any

proceeds obtained by the BIA, Lessors, and/or DOES 1-50, up to the total amount of the indebtedness secured by its Subject Deed of Trust.

### FOURTH CAUSE OF ACTION

**(Declaratory Judgment Regarding the Lease Agreement)**

**(All Defendants and DOES 1-50 Except Commonwealth)**

124.    Deutsche Bank hereby incorporates each and every allegation asserted in Paragraphs 1-124 above, and re-alleges them as though fully set forth herein.

125.    An actual controversy has arisen and now exists between Deutsche Bank, the BIA, Lessors, and DOES 1-50, as to their respective rights and duties under the Lease Agreement and the validity of the cancellation of the Lease Agreement.

126.    The Lease Agreement signed on June 3, 1981 and recorded in the Official Records of the Riverside County Recorder's Office as Instrument Number 81-110352, is a contract for lease of the Subject Property.

127.    The Lease Agreement expressly provides for forty-five days' notice to any and all encumbrancers of any intention to terminate the Lease Agreement, an opportunity to cure any default that can be cured by payment or expenditure of money, and an opportunity to initiate and complete foreclosure for any default that cannot be cured by payment or expenditure of money. (Lease § 18, pp. 14–15).

128.    Deutsche Bank is an encumbrancer of the Subject Property because it is an assignee of the Subject Deed of Trust. Therefore, Deutsche Bank is a third-party beneficiary of the Lease Agreement.

129.    Section 18 of the Lease Agreement, was written expressly to protect the interests and rights of encumbrancers like Deutsche Bank in return for furthering the Lessors' interest of ensuring payment under and compliance with the Lease Agreement.

130.    The BIA and Lessors decided to terminate the Lease Agreement without giving Deutsche Bank proper and sufficient forty-five days' notice of any

29
COMPLAINT

1  intention to terminate the Lease Agreement, an opportunity to cure any default that
2  can be cured by payment or expenditure of money, and an opportunity to initiate
3  and complete foreclosure for any default that cannot be cured by payment or
4  expenditure of money.

5      131.   A justiciable controversy exists because the BIA, Lessors, and DOES
6  1-50 assert that the Lease Agreement has been cancelled, despite failure to follow
7  proper cancellation procedures, including proper and sufficient notice to Deutsche
8  Bank and opportunity to cure or initiate and complete foreclosure.

9      132.   Based on the foregoing, a judicial determination that the manner in
10 which the BIA, Lessors' and DOES 1-50 Cancelled the Lease Agreement violated
11 its terms and is thus ineffective such that the Lease Agreement is fully valid,
12 enforceable, and ongoing, is necessary and appropriate at this time to adjudicate
13 the parties rights, and to protect Deutsche Bank's rights and interests under the
14 Lease Agreement as they impact its Subject Deed of Trust.

**FIFTH CAUSE OF ACTION**

**(Declaratory Judgment Regarding 25 CFR § 165.366)**

**(The BIA and DOES 1–50)**

18     133.   Deutsche Bank hereby incorporates each and every allegation asserted
19 in Paragraphs 1-132 above, and re-alleges them as though fully set forth herein.

20     134.   An actual controversy has arisen and now exists between Deutsche
21 Bank, the BIA, and DOES 1-50, as to their respective rights and duties 25 CFR
22 § 165.366 and the validity of the termination of the Lease Agreement.

23     135.   The Lease Agreement signed on June 3, 1981 and recorded in the
24 Official Records of the Riverside County Recorder's Office as Instrument Number
25 81-110352, is a contract for lease of the Subject Property based upon an offer to
26 lease, acceptance, and valuable consideration.

27     136.   Pursuant to 25 CFR § 162.366, the BIA will transmit to "the lessee
28 and any mortgagee a notice of violation by certified mail, return receipt requested."

**COMPLAINT**

Specifically, 25 CFR § 162.366 states:

(a) In the absence of actions or proceedings described in §162.365(e), or if it is not appropriate for us to defer to the actions or proceedings, we will follow the procedures in paragraphs (b), (c), and (d) of this section and, as applicable, ensure consistency with 25 U.S.C. § 4137.

(b) If we determine there has been a violation of the conditions of a residential lease other than a violation of payment provisions covered by paragraph (c) of this section, we will promptly send the lessee and any mortgagee a notice of violation by certified mail, return receipt requested.

(1) We will send a copy of the notice of violation to the tribe for tribal land, or provide constructive notice to Indian landowners for individually owned Indian land.

(2) The notice of violation will advise the lessee that, within 10 business days of the receipt of a notice of violation, the lessee must:

(i) Cure the violation and notify us, and the tribe for tribal land, in writing that the violation has been cured;

(ii) Dispute our determination that a violation has occurred; or

(iii) Request additional time to cure the violation.

(3) The notice of violation may order the lessee to cease operations under the lease.

(c) A lessee's failure to pay rent in the time and manner required by a residential lease is a violation of the lease, and we will issue a notice of violation in accordance with this paragraph.

(1) We will send the lessee and any mortgagee a notice of violation by certified mail, return receipt requested:

(i) Promptly following the date on which the payment was due, if the lease requires that rental payments be made to us; or

(ii) Promptly following the date on which we receive actual notice of non-payment from the Indian landowners, if the lease provides for payment directly to the Indian landowners….

137. Regulation 25 CFR § 165.366 requiring the BIA to transmit to "the lessee and any mortgagee a notice of violation by certified mail, return receipt requested" in the event of a lease violation, and provide an opportunity to cure, has been effective since January 4, 2013.

138. As an assignee of the Subject Deed of Trust, Deutsche Bank is an

31
COMPLAINT

encumbrancer of the Subject Property. Therefore, under 25 CFR § 165.366, Deutsche Bank was entitled to notice of any violation by certified mail, return receipt requested, and an opportunity to cure any violation of the Lease Agreement.

139.    Despite its regulatory obligation to do so, the BIA did not provide proper and sufficient notice of any violation to Deutsche Bank. Instead of a prompt notice, it first sent a letter to defunct WAMU after the Assignment to Deutsche Bank was recorded as a matter of public record and later appears to have sent a letter to an address other than the address designated on the Assignment to contact for matters relating to the Subject Deed of Trust.

140.    As a result, the BIA decided to terminate the Lease Agreement without giving Deutsche Bank sufficient and proper notice or opportunity to cure as required by 25 CFR § 165.366 and the Administrative Procedures Act.

141.    A justiciable controversy exists since the BIA, the Lessors' and/or DOES 1-50, cancelled the Lease Agreement, despite failure to follow proper termination procedures, including providing sufficient and proper notice to Deutsche Bank and an opportunity to cure or initiate and complete foreclosure.

142.    A judicial determination as to the invalidity of the cancellation of the Lease Agreement under Regulation 25 CFR § 165.366 and the Administrative Procedures Act set forth above is necessary and appropriate to adjudicate the parties rights and to protect Deutsche Bank's rights and interests.

## SIXTH CAUSE OF ACTION

### (Breach of Insurance Contract)

### (Against Commonwealth and DOES 1–50)

143.    Deutsche Bank hereby incorporates each and every allegation asserted in Paragraphs 1-142 above, and re-alleges them as though fully set forth herein.

144.    If the Court determines that either Bowhay's Grant to Whalen, the Subject Deed of Trust, or the Assignment of the Subject Deed of Trust, are invalid

or unenforceable to any extent due to the failure to obtain separate BIA approval, then the Court should also find that Commonwealth breached the Policy.

145.    Plaintiff alleges upon information and belief that Commonwealth failed to prove coverage although it has actual knowledge of the lack of the BIA's separate authorization of the Subject Deed of Trust and undertook to redress this specific issue nearly ten years ago. Plaintiff alleges that Commonwealth failed to complete the task and now in an apparently bad faith maneuver to avoid the loss it literally incurred and caused, a loss that it actually insured Deutsche Bank against, it now seeks to refute any coverage under the title insurance policy claiming that it was actually prejudiced due to untimely notice.  Further, Plaintiff alleges upon information and belief, that Commonwealth's wrongful failure to provide coverage breaches the title insurance policy against its insured, Deutsche Bank, the owner of the indebtedness because no notice of the lack of BIA Authorization was required when Commonwealth already knew of the issue and failed to correct it after representing it would do so, Deutsche Bank did not provide late notice of the issue since it was not provided with sufficient and proper notice itself to trigger any obligation,  Commonwealth failed to adequately investigate the claim and made erroneous and/or incomplete assumptions of sufficient notice in making its coverage determination, and Plaintiff caused no actual prejudice to Commonwealth since its own failed endeavor to obtain separate approval from the BIA is the cause of the prejudice, rather than any notification by Plaintiff.

146.    On or about November 17, 2006, Commonwealth issued the Policy to WAMU and subsequent owners of the indebtedness, now Deutsche Bank.

147.    Plaintiff alleges that the Policy was issued to insure the title to the Subject Property and the validity and enforceability of Subject Deed of Trust. Specifically, the Policy insures against "[t]itle to the estate or Interest described in Schedule A being vested other than as stated herein;" "[u]nmarketability of the tile;" "[a]ny defect in or lien or encumbrance on the title;" "[t]he invalidity or

unenforceability of the lien of the insured mortgage upon the title;" and "[t]he invalidity or unenforceability of any assignment of the insured mortgage. . ."

148.   Plaintiff alleges that Deutsche Bank is an "insured" within the meaning of the Policy. Under Section 1, titled "Definition of Terms" subsection (a)(i), the Policy defines "insured" to mean "the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness. . ."

149.   Plaintiff alleges that the Policy's one-time premium was paid. This title insurance policy is a one-premium agreement to indemnify a policyholder, in amounts not exceeding the face amount of the policy, for losses caused by either on-record and/or off-record defects that are found in the title or interest in an insured property to have existed on the date on which the policy is issued. This title insurance policy, like most, was paid for with only one premium at the time that the loan was originated and there are no continuation premiums.

150.   Plaintiff alleges that Deutsche Bank has performed its obligations under the terms of the Policy, including payment and that Deutsche Bank timely tendered its claim for coverage.  Plaintiff further alleges that Commonwealth had actual notice of the failure to obtain separate BIA approval for the Subject Deed of Trust and failed to correct it in nearly ten years despite undertaking the responsibility to do so under the Policy.

151.   On or about January 7, 2016, the BIA sent a letter to Bowhay regarding the final decision to terminate the Lease Agreement for the Subject Property. The BIA's January 7, 2016 letter asserted that the Subject Deed of Trust, the Grant Deed to Whalen, and the Corporate Assignment of Deed of Trust to Deutsche Bank were not approved by the BIA. (See Ex. G). The BIA's January 7, 2016 letter was sent to an address other than one designated on the Assignment to contact for matters relating to the Subject Deed of Trust.

152.   According to the BIA, without BIA approval, the Subject Deed of Trust is invalid and unenforceable. Thus, this falls within the Policy's coverage for

34

COMPLAINT

"[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title."

153.   According to the BIA, without BIA approval, the Grant Deed to Whalen was void. Thus, this falls within the Policy's coverage for a "defect… in title" under the Policy, "[t]itle to the estate or Interest described in Schedule A" being "vested other than as stated" in the Policy, coverage where title to the Subject Property was "[u]nmarketable," and for "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title."

154.   According to the BIA, without BIA approval, the Corporate Assignment of the Deed of Trust was invalid and unenforceable. Thus, this falls within the Policy's coverage for "[t]he invalidity or unenforceability of any assignment of the insured mortgage…."

155.   Although Deutsche Bank tendered a claim to Commonwealth and/or DOES 1-50 under the Policy, Commonwealth denied the claim, in breach of the Policy.

156.   Commonwealth and DOES 1-50 may not ignore evidence which supports coverage. It did so and acted unreasonably towards its insured, Deutsche Bank.  It already knew of the failure of separate authorization has alleged above, yet failed to complete its redress of the issue and then denied coverage under the pretense of actual prejudice. Further, Plaintiff alleges that while investigating the claim, Commonwealth had a duty to diligently search for evidence which supports it's insured's claim. However, it sought to discover only the evidence that it contended defeated the claim and thus held its own interest above that of the insured, Deutsche Bank.  It failed to reveal that it had previously discovered and attempted to redress the exact issue that was the basis of Deutsche Bank's claim, almost ten years before the lease was cancelled and then refused coverage to Deutsche Bank based upon incomplete and/or erroneous assumptions of notice prior to the cancellation without proper investigation and more significantly,

35

COMPLAINT

asserted an obligation of notice and alleged actual prejudice when no further was required since it already knew of the issue, and no actual prejudice was caused by Deutsche Bank since Commonwealth's own actions and failure to complete the correction of title it undertook was the cause of the title defect, not Deutsche Bank's notice. Commonwealth's failure to correct the BIA authorization after undertaking the responsibility, followed by its secretive denial of title insurance coverage for this same defect as defined in the Policy, breaches the Policy in bad faith. Thus, Commonwealth's denial was unreasonable and without proper cause.

157.    As a result of Commonwealth's and DOES 1-50's breach of the Policy, and while objecting to the Defendants claims in their entirety as to the Subject Deed of Trust, Deutsche Bank alleges that it suffered damages of approximately $350,000.00, in an amount to be proven at the time of trial.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment Regarding Insurance Contract)

### (Against Commonwealth and DOES 1–50)

158.    Deutsche Bank hereby incorporates each and every allegation asserted in Paragraphs 1-157 above, and re-alleges them as though fully set forth herein.

159.    If the Court determines that either Bowhay's Grant to Whalen, the Subject Deed of Trust, or the Assignment thereof, was invalid or unenforceable, then the Court should also grant declaratory judgment in Deutsche Bank's favor.

160.    An actual controversy has arisen and now exists between Deutsche Bank, Commonwealth, and DOES 1-50, as to their respective rights and duties under the Policy.

161.    On or about November 17, 2006, Commonwealth issued the Policy to insure the title to the Subject Property and the validity of Subject Deed of Trust. Specifically, the Policy insures against "[t]itle to the estate or Interest described in Schedule A being vested other than as stated herein;" "[u]nmarketability of the tile;" "[a]ny defect in or lien or encumbrance on the title;" "[t]he invalidity or

36

unenforceability of the lien of the insured mortgage upon the title;" and "[t]he invalidity or unenforceability of any assignment of the insured mortgage. . . "

162.   Deutsche Bank is an "insured" within the meaning of the Policy. Under Section 1, titled "Definition of Terms" subsection (a)(i), the Policy defines "insured" to mean "the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness . . ."

163.   Deutsche Bank has performed its obligations under the terms of the Policy.

164.   According to the BIA, without BIA approval, the Subject Deed of Trust is invalid and unenforceable. This issue falls within the Policy's coverage for "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title."

165.   According to the BIA, without BIA approval, the Grant Deed to Whalen was void. This issue falls within the Policy's coverage for "[t]itle to the estate or Interest described in Schedule A" being "vested other than as stated" in the Policy.

166.   According to the BIA, without BIA approval, the Grant Deed to Whalen was void. This issue falls within the Policy's coverage for a "defect… in title," title challenged as "[u]nmarketable," and the Policy's coverage for "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title."

167.   According to the BIA, without BIA approval, the Corporate Assignment of the Deed of Trust was invalid and unenforceable. This dispute falls within the Policy's coverage for "[t]he invalidity or unenforceability of any assignment of the insured mortgage…."

168.   Although Deutsche Bank tendered a claim to Commonwealth under the Policy, Commonwealth denied the claim, in breach of the Policy.

169.   As a result of Commonwealth's breach of the Policy, and while objecting, opposing, and reserving all rights to refute the Defendants actions,

COMPLAINT

claims, and legal contentions and/or legal effect, to the extent the court determines, if any, Deutsche Bank sustained damage to its interest and rights under the Subject Deed of Trust, including a cloud on title due to the cancellation and failure to obtain BIA approval, and the right to complete the non-judicial foreclosure process.

170.   A justiciable controversy exists since if Commonwealth continues to deny Deutsche Bank's claim in breach of the Policy, Deutsche Bank will suffer damages from the cloud on its title of approximately $350,000.00 in an amount to be determined at trial.

171.   A judicial determination is necessary and appropriate at this time under the circumstances to adjudicate the parties rights and to protect Deutsche Bank's rights, and interests under the Policy and the Subject Deed of Trust.

## PRAYER FOR RELIEF

WHEREFORE, Deutsche Bank prays for judgment against the Defendants as set forth below:

A.   For a judicial determination that the Subject Deed of Trust is fully valid and enforceable;

B.   For monetary damages against Lessors and DOES 1-50 as a result of Lessors' breach of the Lease Agreement;

C.   For reinstatement of the Lease Agreement by BIA and Lessors;

D.   For imposition of a constructive trust with respect to the Subject Property, including any proceeds, against Lessors and/or DOES 1-50;

E.   For a judicial declaration that the Lease Agreement is not cancelled;

F.   For a judicial declaration that any purported termination of the Lease Agreement is void without first giving proper and sufficient notice and opportunity to cure or foreclose to Deutsche Bank as specified by section 18 of the Lease Agreement and under 25 CFR § 162.366 and 5 U.S.C.A. § 706(2)(A);

COMPLAINT

1         G.     For Specific Performance of Section 18 of the Lease Agreement by

2    Lessors;

3         H.     For monetary damages from Commonwealth as a result of

4    Commonwealth's breach of its contractual obligations under the Policy;

5         I.     For a judicial determination of Deutsche Bank and Commonwealth's

6    respective rights and duties under the Policy;

7         J.     For a judicial declaration that Commonwealth must indemnify

8    Deutsche Bank, purchase the Subject Loan, or establish the validity of the Subject

9    Deed of Trust under the Policy;

10        K.     For reasonable attorneys' fees and costs of suit incurred herein; and

11        L.     For such other relief as the Court may deem just and proper.

Dated: February 2, 2017          ALBERTSON LAW

By: _Gina L. Albertson_
     GINA L. ALBERTSON
     Attorneys for Plaintiff,
     **Deutsche Bank National Trust Company, as Trustee, in Trust for Registered Holders of WaMu Asset-Backed Certificates WaMu Series 2007-HE1 Trust**